UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Holly Couture (f/k/a Gagnon)

  v.          Civil No. 14-cv-00069-JL
             Opinion No. 2015 DNH 128
Carolyn Colvin,
Acting Commissioner
of Social Security


**ORDER ON APPEAL**

Holly Couture has appealed the Social Security
Administration's ("SSA") denial of her application for a period
of disability and disability insurance benefits.  An
administrative law judge ("ALJ") ruled that, despite Couture's
severe impairments (fibromyalgia and asthma), she retains the
residual functional capacity ("RFC") to perform jobs that exist
in significant numbers in the national economy, and, as a result,
is not disabled.  See 20 C.F.R. § 404.1505(a).  The Appeals
Council later denied Couture's request for review, see id.
§ 404.968(a), with the result that the ALJ's decision became the
final decision on Couture's application, see id. § 404.981.
Couture then appealed the decision to this court, which has
jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Couture has filed a motion to reverse the decision.  See
L.R. 9.1(b)(1).  Couture argues that the ALJ erred at step four
of the process by improperly evaluating the medical opinion
evidence bearing on his RFC determination in a manner that failed

to properly account for evidence of Couture's fibromyalgia and, as a result, erroneously found in step five that Couture can perform jobs that exist in the national economy.  The Acting Commissioner of the Social Security Administration has cross-moved for an order affirming the ALJ's decision, see L.R. 9.1(d), defending the ALJ's RFC determination as supported by substantial evidence.  As explained fully below, the court agrees with the Acting Commissioner, and therefore grants her motion to affirm (and denies Couture's motion to reverse) the decision.

I.  **Applicable legal standard**

The court limits its review of a final decision of the SSA "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  The court will uphold the ALJ's decision if it is supported by "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).  Though the evidence in the record may support multiple conclusions, the court will still uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Heath & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

2

## II.  Background

In assessing Couture's request for disability benefits, the ALJ engaged in the requisite five-step process.  See 20 C.F.R. § 416.920.  He first concluded that Couture had not engaged in substantial gainful activity since the alleged onset of her disability on March 15, 2011.  At the second step, he determined that Couture suffers from two severe impairments:  fibromyalgia[1] and asthma.  The ALJ then found that Couture's impairments did not meet or "medically equal" the severity of one of the impairments listed in the Social Security regulations.  See 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.  At the fourth step, the ALJ concluded that Couture retained the RFC to "perform light work as defined in 20 C.F.R. § 404.1567(b) except she can occasionally climb, stoop, crouch, crawl and kneel," and "[s]he must avoid concentrated exposure to respiratory irritants, such as fumes, dusts and gasses."  Admin. R. at 17.  After finding that Couture could not perform her past relevant work as a baker,

---

[1]"Fibromyalgia is defined as '[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause.' Further, '[t]he musculoskeletal and neurological examinations are normal in fibromyalgia patients, and there are no laboratory abnormalities.' The American College of Rheumatology nonetheless has established diagnostic criteria that include 'pain on both sides of the body, both above and below the waist, [and] point tenderness in at least 11 of 18 specified sites.'" Johnson v. Astrue, 597 F.3d 409, 410 (1st Cir. 2009) (quoting Stedman's Medical Dictionary, at 671 (27th ed. 2000) and Harrison's Principles of Internal Medicine, at 2056 (16th ed. 2005)).

day care worker, and child monitor, see 20 C.F.R. § 404.1565, the ALJ continued to step five, at which the SSA bears the burden of showing that a claimant can perform other jobs that exist in significant numbers in the economy. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). Relying on the testimony of a vocational expert, the ALJ concluded that Couture could perform such jobs as companion, telemarketer, appointment clerk, and final assembler. Therefore, the ALJ found, Couture was not disabled within the meaning of the Social Security Act.

III. **Analysis**

At issue in this appeal is whether the ALJ's RFC assessment is supported by substantial evidence in the record. In evaluating Couture's RFC as related to her fibromyalgia[2], the ALJ had three medical opinions at his disposal: those of Dr. Nicole Orzechowski, Couture's treating rheumatologist; Dr. Matthew Masewic, a consultative examiner; and Dr. John MacEachran, a state agency medical consultant. Couture maintains that the ALJ erred by affording "less weight" to the opinion of Dr. Orzechowski and only "some weight" to the opinion of Dr. MacEachran. Couture then argues that the ALJ ultimately and impermissibly relied on his own lay interpretation of the medical

---

[2]Couture does not dispute the ALJ's RFC analysis based on her asthma.

evidence in determining her RFC after affording "great weight" to the opinion of Dr. Masewic, because that opinion did not include a function-by-function capacity analysis.[3]  The court disagrees.

## A.   Medical opinion evidence

### 1.   Dr. Orzechowski

The argument that undergirds Couture's appeal is her contention that the ALJ erred by affording "limited weight"-- instead of controlling or greater weight--to the opinion of Couture's treating physician, Dr. Orzechowski.  Couture predictably invokes the SSA's rule that more weight should generally be accorded to treating sources than non-treating sources.  20 C.F.R. § 404.1527(c)(1).  The opinion of a treating physician must be given controlling weight if it is well supported by medically acceptable diagnostic techniques and not inconsistent with other evidence on the record.  Id. § 404.1527(c)(2).  If controlling weight is not afforded the

---

[3]In her reply memorandum, Couture alleges that the ALJ further erred in evaluating her RFC by failing to take into consideration or address:  (1) certain elements of the opinion of Dr. William Dinan, who evaluated Couture's mental health; (2) that Couture's exercise was part of her prescribed treatment; (3) an agency Field Office statement that Couture walked slowly; (4) a physical therapy evaluation; (5) the ALJ's own findings about Couture's hypomobility; (6) that Couture's care for her parents was accommodated.  But Couture did not develop--or even raise-- these arguments in her opening memorandum.  Thus, they are deemed waived.  See, e.g., Hypertherm, Inc. v. Amer. Torch Top Co., 2008 DNH 216, at 6 n.5.

opinion of a treating source, the ALJ must "give good reasons" for the weight afforded that source.  Id. § 404.1527(c)(2). Where, as here, an ALJ relies on inconsistencies between a source's opinion and the record to discount that opinion, "the claimed inconsistencies must be adequately supported by the record as well."  Beck v. Astrue, 2011 DNH 146, 14.  Here, the ALJ's stated reasons for discounting Dr. Orzechowski's opinion find substantial support in the record.

Dr. Orzechowski opined only that Couture "would be best served by working part time," that is, "for four hours per shift, preferably during the day," and that she "should be allowed to sit periodically, perhaps 15 minutes during a 4 hour shift." Admin. R. at 355.  In discounting Dr. Orzechowski's opinion, the ALJ provided a thorough review of the record evidence provided by Couture and her mother, as well as the other medical opinions in evidence.

The ALJ relied primarily on Couture's level of activity during her alleged period of disability, which conflicted with Dr. Orzechowski's conclusion that Couture could only work four hours out of the day.  Yet Couture herself reported that she had no difficulty sitting, standing, or walking; that she attended the gym regularly, and walked, hiked, and danced for exercise; that she performed caretaking services for her parents for up to seven hours a day; and that she performed all of her own

household chores, including cooking meals.  As the ALJ further
observed, Couture's mother validated the reports of Couture's
activity levels, explaining that Couture ran errands, cooked, and
cleaned for her mother, helped her mother bathe, and drove her to
medical appointments.

Next, the ALJ relied on inconsistencies between Dr.
Orzechowski's opinion and "the somewhat benign medical signs and
symptoms reflected in her own treatment notes."  Admin. R. at 19.
For example, Dr. Orzechowski opined on August 9, 2011 that
Couture could lift no more than 20 pounds; but in her opinion,
rendered only four months later, she opined that Couture was
limited to lifting 10 pounds.  An ALJ may, as he did here,
permissibly discount even a treating medical provider's opinion
when he finds that it is internally inconsistent and conclusory.
Eley v. Colvin, 2015 DNH 085, 7-8.

As further support for discounting Dr. Orzechowski's
opinion, the ALJ observed that it conflicted with the two other
medical source statements on the record.  Both Dr. Masewic and
Dr. MacEachran failed to find Couture's fibromyalgia disabling.
Dr. Masewic, who examined Couture, opined that her fibromyalgia
"would have a mild effect on functional capacity."  Admin. R. at
351-52.  Dr. MacEachran, the state agency medical consultant who
reviewed Couture's record, opined that Couture could stand and/or
walk for a total of 4 hours and could sit for a total of "about 6

hours in an 8-hour workday," with certain limited postural and exertional limitations.  Admin. R. at 78.  The ALJ reasonably concluded that these assessments contradict Dr. Orzechowski's determination that Couture "would be best served" by working only part-time.

Finally, the ALJ noted that Dr. Orzechowski's opinion was inconsistent with Couture's work history.  Specifically, the ALJ concluded that Couture left her previous job to care for her ailing mother, not due to the onset of her disability, and that Couture began looking for work when her mother's condition began to improve.  These conclusions are supported by Couture's reports to Dr. Orzechowski that she was seeking "an office job," Admin. R. at 295, and statements made by Couture at the hearing and to Dr. Pralhad Bide, who evaluated her in connection with her asthma.

In light of the ALJ's thorough analysis and lengthy exposition of his reasoning, the court cannot conclude that he erred by discounting the medical opinion of Couture's treating physician, or by failing to provide good reasons for doing so. To the contrary, the ALJ's decision to give Dr. Orzechowski's opinion "little weight" is well-supported by substantial evidence in the record, and the ALJ adequately explained his reasoning.

Nor did the ALJ run afoul of Johnson v. Astrue, 597 F.3d 409 (1st Cir. 2010), wherein the Court of Appeals for the First

8

Circuit explained that "once the ALJ accepted the diagnosis of
fibromyalgia, [he] also 'had no choice but to conclude that the
claimant suffer[ed] from the symptoms usually associated with
[such condition], unless there was substantial evidence in the
record to support a finding that claimant did not endure a
particular symptom or symptoms.'" Johnson, 597 F.3d at 412
(quoting Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994)).  In
Johnson, the ALJ rejected a treating physician's opinion because,
aside from tenderness at the trigger points associated with
fibromyalgia, there was no "objective" medical evidence to
support an assessment of disability.  See Johnson, 597 F.3d at
412.  The Court of Appeals found that this decision was not
supported by substantial evidence and explained that, "since
trigger points are the only 'objective' signs of fibromyalgia,"
the ALJ errs when he "effectively . . . requir[es] objective
evidence beyond the clinical findings necessary for a diagnosis
of fibromyalgia under established medical guidelines." Johnson,
597 F.3d 409, 412 (quoting Green-Younger v. Barnhart, 335 F.3d
99, 106-07 (2d Cir. 2003)).

    Couture contends that the ALJ made substantially the same
mistake here.  But this case does not so neatly resemble Johnson.
The ALJ did not discount Dr. Orzechowski's opinion due to a lack
of "objective" medical evidence.  In fact, the ALJ accepted that
Couture suffers from the symptoms usually associated with

fibromyalgia.  Having done so, the ALJ then discounted Dr.
Orzechowski's opinion as to the extent of Couture's suffering
because it was inconsistent with other evidence on the record, as
well as her own earlier opinion.  The ALJ is entitled--and,
indeed, required--to consider the entire record when weighing the
opinion evidence.[4]  See generally, SSR No. 96-2p, 1996 WL 374188,
at *1; Lopes v. Barnhart, 372 F. Supp. 2d 185, 194-95 (D. Mass.
2005); 20 C.F.R. § 404.1527.  And, as discussed supra, the
inconsistencies upon which the ALJ relied in discounting Dr.
Orzechowski's opinion are more than adequately supported by
substantial evidence in the record.

### 2.   Dr. MacEachran

Couture also contends that the ALJ erred by discounting the
opinion of the state agency consultant, Dr. MacEachran, who
opined that Couture could stand and/or walk for a total of four
hours, could sit for a total of "about 6 hours in an 8-hour
workday," could occasionally crouch and frequently climb, had no
limitations on balancing, stooping, kneeling, crawling, pushing,
or pulling, and "demonstrate[d] the maximum sustained work

---

[4]The ALJ need not, as Couture suggests, explicitly take
account of all the factors articulated in 20 C.F.R. § 404.1527(c)
in determining what weight to give a treating physician's
opinion, so long as the court is able, as it is here, "to discern
the rationale the ALJ used to reach his determination and that
determination is founded on 'good reasons' that are supported by
substantial record evidence." Figueroa v. Astrue, 2012 DNH 101,
15.

capability" for sedentary work.  Admin. R. at 78, 80.  The ALJ
gave "only some weight" to the opinion of Dr. MacEachran "because
he did not examine the claimant."  Admin R. at 19.

The ALJ is not bound by the opinions of state agency
consultants, but must consider them and explain the weight given
to those opinions.  SSR 96-6p, Titles II and XVI: Consideration
of Administrative Findings of Fact by State Agency Medical and
Psychological Consultants and Other Program Physicians, 1996 WL
374180, at *1 (S.S.A. 1996)).  As Couture points out, a state
agency consultant's opinion can be given weight "only insofar as
[it is] supported by evidence in the case record, considering
such factors as the supportability of the opinion in the
evidence" and "the consistency of the opinion with the record as
a whole, including other medical opinions . . . ."  SSR 96-6p,
1996 WL 374180, at *2.

Here, Couture argues that Dr. MacEachran's opinion "that
Plaintiff is precluded from performing light work because she can
stand/walk for only 4 hours per workday," Plaintiff's Memorandum
at 10, should be afforded greater weight because it is consistent
with the opinion of Dr. Orzechowski that Couture was limited to
working four hours per day.  The court does not find this
argument persuasive.  Nowhere did Dr. MacEachran opine that
Couture could only work part-time.  Instead, he opined that she
could stand or walk for up to four hours per day, and sit for up

11

to six hours per day, which suggests the ability to perform full-time work.

Nor did the ALJ err by finding that Couture was capable of "light work" when MacEachran recommended her for sedentary work, concluding that she could stand or walk for only four hours per day.  A claimant need not be able to stand or walk for a full eight hours for the ALJ to find that she can perform light work with some restrictions.  See Dubois v. Astrue, 2012 DNH 109, 13-14 (medical opinion that claimant could stand/walk only three hours a day supported finding of ability to do light work with some restrictions); Putnam v. Astrue, 2011 DNH 123, 10-11 ("[C]laimant's inability to perform the full range of light work does not compel the conclusion that he is only capable of less physically demanding (i.e., sedentary) work, nor does it compel the conclusion that he is disabled.").  A job may also fall into the category of light work "when it involves sitting most of the time."[5]  SSR 83-10, Titles II and XVI: Determining Capability to Do Other Work—The Medical-Vocational Rules of Appendix 2, 1983 WL 31251, *5 (S.S.A. 1983).

---

[5]Even had the ALJ relied more heavily on Dr. MacEachran's opinion and found Couture capable only of sedentary work, the outcome here would remain the same.  An RFC allowing for sedentary work does not equate to disability.  See Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329-30 (1st Cir. 1990).  And, as the Acting Commissioner correctly observed, three of the jobs identified by the vocational expert as suitable for Couture require only the capability for sedentary work.

### 3. Lay Opinion

Finally, Couture argues that the ALJ erred by substituting his own lay judgment for that of the medical experts.  Having discounted the opinions of Drs. Orzechowski and MacEachran, the ALJ relied most heavily on the opinion of Dr. Masewic,[6] who concluded that Couture's fibromyalgia "would have a mild effect on [her] functional capacity," Admin. R. at 352, but did not provide a function-by-function analysis.  Couture does not directly contest the weight that the ALJ gave to Dr. Masewic's opinion.  Rather, she contends that, because the ALJ relied most heavily on an opinion lacking a function-by-function analysis, the ALJ must have substituted his own lay interpretation of the medical evidence for that of the medical experts.  The court disagrees.

"Although determination of a claimant's RFC is an administrative decision that is the responsibility of the Commissioner, an ALJ, as a lay person, cannot interpret a claimant's medical records to determine his RFC.  An ALJ must

---

[6]As grounds for affording Dr. Masewic's opinion "great weight," the ALJ observed that Dr. Masewic was "an examining medical source who is familiar with Social Security Administration program regulations," and that his opinion was largely in accord with that of Dr. MacEachran, Couture's level of activities as reported by both Couture and her mother, the circumstances of Couture's departure from her previous job, and the fact that she looked for work during the period of her alleged disability.  Admin R. at 19.

rely to some degree on RFC evaluations from a physician or another expert." Delafontaine v. Astrue, 2011 DNH 005, 25-26. But, "although an ALJ cannot ab initio interpret medical records to determine a claimant's RFC, he can 'render[] common-sense judgments about functional capacity based on medical findings.'" Id. at 26 (quoting Gordils, 921 F.2d at 329 (1st Cir.1990)); see also Graham v. Barnhart, No. 02-243, 2006 WL 1236837, at *7 (D.N.H. May 9, 2006) (Barbadoro, J.).  Thus, observations from medical sources can still inform the ALJ's RFC determination even where the medical source does not explicitly address the claimant's functional limitation "as long as the [ALJ] does not overstep the bounds of a lay person's competence and render a medical judgment." Gordils, 921 F.2d at 329.

Here, the ALJ properly grounded his RFC assessment not in raw medical data, but in Dr. Masewic's medical findings.  Dr. Masewic met with Couture, documented her subjective complaints, performed and recorded the results of a physical examination, determined that Couture suffered from fibromyalgia, assessed the effect of that diagnosis on her functional capacity, and concluded that the effect would be "mild."  He did not observe any specific limitations resulting from Couture's fibromyalgia. The ALJ then interpreted Dr. Masewic's finding--not Couture's medical records or raw medical data--along with the opinions of

14

other experts[7] and other record evidence discussed _supra_ in crafting Couture's RFC.

### B.   **Step Five Analysis**

Finally, Couture argues that the ALJ erred when he posed a hypothetical question to the vocational expert that was based upon the allegedly erroneous RFC.  Having concluded that the ALJ's RFC determination was proper and supported by substantial evidence in the record, the court finds no error.[8]

## IV.  **Conclusion**

For the reasons just explained, the ALJ's conclusion that Couture is not disabled is supported by substantial evidence in

---

[7]For example, while the ALJ only gave Dr. MacEachran's opinion "some weight" because he did not examine Couture, it is clear that the ALJ relied at least to some degree on Dr. MacEachran's opinion.  The exertional limitations that Dr. MacEachran assigned to Couture--the ability to occasionally lift 20 pounds and frequently lift 10--is consistent with the exertional limits of light work as defined in § 404.1567(b).  The ALJ "is entitled to piece together the relevant medical facts from the findings of multiple physicians." Delafontaine v. Astrue, 2011 DNH 005, at 26 (internal quotations omitted).

[8]In a single sentence in the introduction of her argument, Couture claims that the vocational witness's testimony that Couture can perform semiskilled occupations is unsupported by substantial evidence because there was no evidence that Couture has the transferable skills necessary for those occupations.  Couture has made no effort to explain this position, so the court considers this argument waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

the record.  Couture's motion to reverse the SSA's decision[9] is

DENIED and the Acting Commissioner's motion to affirm[10] is

GRANTED.  The clerk shall enter judgment accordingly and close

the case.

        **SO ORDERED.**

                                _____
                                Joseph N. Laplante
                                United States District Judge

Dated: June 25, 2015

cc:  Tamara N. Gallagher, Esq.
     Robert J. Rabuck, Esq.

---

[9]Document no. 9.

[10]Document no. 11.

16